The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good morning. Thank you. The court is now in session. We'll call 4-23-0790, the estate of Odarzcenski vs. Polaris Industries et al. Will counsel for the appellant please state your name for the record. Ken Sensen on behalf of the estate of Victoria Odarzcenko. Thank you. Counsel for the appellee. Good morning. Stacey Shelley on behalf of Richmond Motorsports LLC. Thank you. The appellant may proceed. Your honors, what the trial court did in this case, frankly, I think is outrageous. And there has never been a case that I found anywhere in the nation that has ever said that the plaintiff is has a right to be denied all discovery of the defendant from the defendant in order to make for the trial court to make a determination about whether there's jurisdiction. We got zero, zero discovery in this case from Richmond Motorsports, and that's just wrong because the standard here... Counsel, did the court allow one interrogatory? It did allow one interrogatory. The other side refused to answer it. They filed a notice of appeal. Then at some point the interrogatory only concerned where the delivery was, which frankly isn't really the issue here because the issue is whether or not Richmond Motorsports purposely directed their actions at the form state. What the standard is, is whether or not he made a finding. Judge Tobin made a finding that Richmond had engaged in mere solicitation and that Richmond's actions were merely passive in nature without giving me one opportunity to conduct any discovery about things that my client couldn't possibly know and Zeme doesn't know, which is what was Richmond Motorsports actions towards Illinois. That is exclusively in the control of the Richmond Motorsports and they submitted no affidavit and they basically just said, we're not going to tell you anything. We're not going to tell you what efforts we made to interact in Illinois. We're not even going to tell you how we need contact with Zeme. We're just going to say you haven't proved anything and you lose. I have never seen a case anywhere in the nation that I've been able to find where somebody has been denied all things that they could only get from the defendant's seller, in this case Richmond Motorsports, in an effort to try to determine jurisdiction. Let me barge in, so to speak, counsel. Isn't it incumbent upon you to plead prima facie allegation of jurisdiction prior to getting to things like affidavits and discovery? Well, here's what I'd say. First of all, I think we did. Okay. And I think Zeme's information is sufficient in that. But frankly, his testimony raised more questions than it answered things. For one, obviously there were all of these phone calls with him while he's in Illinois and we don't know what Richmond Motorsports' story is about what happened during those calls. We just have his story. And certainly my client who's dead and didn't have anything to do with the purchase of this vehicle wouldn't have any information on that. And the reality of it is we're not limited to just one side story. Richmond's got a story on this case. Counsel, Richmond didn't submit evidentiary material. You had no evidentiary facts to rebut. The issue here was the court felt that you didn't create a prima facie showing of discovery. And then it exercised its discretion to limit what it saw then as a fishing expedition to go after what you didn't have. Well, I just respectfully completely disagree with that. And I think it's completely unfair because what the trial court said was Richmond's actions were merely passive in nature. How do they reach that conclusion when we've got no evidence from Richmond? I mean, it's just... Well, counsel, the burden, the pleading is, the burden is on you. I think it's a timing. When do we get to that? For them to simply shut us down. I challenge this panel to come up with a case anywhere in the nation where you don't get any discovery on this issue about what their intentional actions were and interactions were with the form state. It's just simply unfair to do this in this case. And typically how these cases resolve themselves is one, there's no objection to this because it's so obviously relevant. Or the other way happens is that the people that are objecting to jurisdiction provide an affidavit. That person gets the post. And now you have an exploration of the facts to just sit there and say, and you know, here's the thing, Judge Barch got this. He completely understood what was going on. He was all in to allow this discovery. He thought it was fair. He thought it was, it was, it was completely appropriate on these facts. And then Judge Balogh came in and started talking about how he wants to reverse Judge Barch, even though it's his first day on the case, he gets SOJed. And then all of a sudden, we've got Judge Tobin, a criminal court judge that starts saying, we're going to shut down all discovery on jurisdiction and reverses basically everything that Barch had said. We, I don't even know how many times we litigated this issue. There were seven, eight motions between the different parties on this case on this issue. I mean, the reality of it was, is he didn't, he didn't simply respond to a Richmond Motorsports' website. He did a search for a vehicle and then somehow, maybe some third party that Richmond had hired to reach out. Somehow he then responds to that. And now they're starting to call him, call him on the phone to talk about this and entice him to come to Kentucky to talk to him more. I mean, the reality of it is, is that there's more than enough evidence in this case to justify finding out what Richmond's story is on this case. And to simply sit there and say, well, you got to figure this out from Zine and you got, and you, and you know, you can't access your own client's information because she's dead and she didn't know anyways. That's just simply unfair on these facts. I mean, what their story is about how it was that he came to respond to an ad and what exactly VIP was and what these six phone calls from, from Kentucky to Illinois were. That wasn't, that wasn't the basis of their motion. They didn't put in facts and say, based on these facts, there's no jurisdiction. What they said was you didn't have enough to get past go. You didn't have any allegations in your original pleading. And, and you, you were in the judge's mind looking to cure that lack of information from the discovery. So here's what I'd say about that. There's no possible way that it can be fair to determine somebody's jurisdiction without getting the other side's information about that. When your client has no access to it. So, let me interject. So a challenge is laid down. I just want to answer your challenge. Are you familiar with Supreme Court, Illinois case of Nelson. In the complaint allegations of facts would show that the circuit court has personal jurisdiction is necessary. There's the case of screen gems. I can get you the full site. That's Illinois app. 3rd. Jurisdictional discovery unnecessary until the plaintiff has pleaded prima facie case of personal jurisdiction. It seems to that seems to address the case that he said doesn't exist. But here's what I say, we know in Illinois, he was solicited. That's a fact. We know in Illinois, they called him 4 times. That's a fact. Okay. For this court to say, we don't get to further explore that because that's not quote unquote prima facie. I just completely disagree with. I have a question. Yeah. Do you have authority stands for the proposition that web based advertisement alone invites this type of jurisdiction. Yeah, I do. I mean, there's excited in our brief. It's that parking case. I can't remember the exact name of it. But, I mean, there is there is case law out there that says active websites can be enough. But I personally think that when he was he searched for this vehicle that he was not directed to their website. He was directed to a third party that had been hired by Richmond Motorsports to create to create advertisement for them in a lot of different places, including Illinois. But we just simply don't know the answer to that. And I don't know what conversations he had with the salespeople. I don't know what what third party they hired to entice him to to to respond so that they're now calling them in Illinois. Right. But all of these things. Here's the thing. You don't get to you're not you shouldn't be forced to try your case or present evidence with your hands tied behind your back. And there are basic facts about this case. The judge Barks totally got were fair. And my client, the estate of Victoria and George, who lost his only daughter, thinks they should have access to before somebody comes in and says, you know what, we conclude as a matter of law that Richmond's actions were passive in nature. We simply you can't you can't deny people evidence and then turn around and say you lose because you didn't present anything. That's just completely unfair. And that's exactly what Judge Tobin did in this case. And you know what, I sleep well knowing that I'm going to do the best I can for my client. I think this is unfair and unfair decision. I try. I thought Judge Barks got it. I think he understood that reasonable discovery was fine. In fact, they may have objected to some of our requests. And then we would have had a discussion before Judge Barks about whether those were reasonable. But to simply say, well, he picked up the vehicle in Kentucky that therefore these third parties they hired these phone calls this somehow why he's in he sees something on the Internet and he's calling him that none of that's discoverable. I just think it's completely unfair. And so you keep saying it's a third party. What difference does that make? What difference does it make whether it's a third party or an employee of the defendant? Well, I mean, that's a good question. I don't I mean, again, you're asking me to speculate, but I would say this. No, you're the one who keeps making the point. Here's what I'd say. Here's what I'd say about that. I would say this, that if a third party was engaged, they were engaged to be more than passive as far as selling this vehicle. In other words, I would expect that their business model was to go reach out to Illinois people and try to get them to buy vehicles from Richmond's Motorsports. So that's why I think now do I know for a fact that a third party with that business model was trying to do that? I do not. But I think I have absolute right to try to explore that. Well, but absolute is probably a poor term in this context. Doesn't the trial court have authority to limit the discovery as it sees appropriate given the showing that you've made of a prima facie case of jurisdiction? And if that's if that's something within the trial court's discretion, what's the argument that the trial court abused its discretion? Well, here's what I'd say. I mean, does the court have the power to do whatever they want? Absolutely. There is no judge in this world, including this panel, that doesn't have the power to do whatever they want. That doesn't make it right. That doesn't make it fair. Okay. From our perspective, the question is whether the judge abused his discretion. And what I'm saying is when there's zero cases in this nation under these facts, shutting people down for trying to establish jurisdiction in a products liability wrongful death case, and we don't know. Governor just gave you the case. Well, I don't I don't I'm not familiar with the case, but here's what I'd say. What he's, I think, trying to say is that that that them hiring somebody to market into Illinois and him and them making all these phone calls to Illinois and them posting all this advertising to entice people in Illinois is not is a matter of law. Not enough for a prima facie case to force Richmond Motorsports to at least engage in discovery. That seems to be what the case that Honorable Kavanaugh just mentioned. I don't think on these facts. That's a fair conclusion. In other words, I get the fact as a legal premise that if you if you present nothing, you shouldn't get discovery, but we don't have nothing here. We just don't. And, you know, I mean, if this court is going to conclude that we've got nothing and that we presented nothing and we get a right to do no discovery, I can't stop this court as as you mentioned, courts can do whatever they want. That doesn't make it. I think that was you who mentioned that. I don't think that was us. Okay, well, in any event, I mean, I think, you know, the thing is, is what's the number one thing that cases should be decided on their merits. And this, this issue was not resolved on its merits because we were denied fundamental discovery. We were denied fundamental discovery. The judge barge embraced and jurisdiction do not get resolved on their merits. I mean, that's, that's true. So, basically what they get a free jet out of jail free card, because because we never get to the merits because we can't prove jurisdiction. No discovery that happens in every case where jurisdiction is found to not exist where the plaintiff hasn't shown a prima facie case of jurisdiction, they don't get to the merits and you're making it as though that would be a dramatic unusual outcome when in fact, it's just by definition, the outcome. Well, here's what I'd say. If you think that we haven't made a prima facie case to allow discovery into what we couldn't possibly know, I can't say anything that is going to change your mind in the sense that if that's if you're convinced that we have presented nothing that warrants further discovery it to peek under the tent and find out how they targeted Illinois. I can't, I can't, I mean, I think that's unfair. My client thinks that's unfair, but you absolutely could make a different judgment on that. And, you know, I can't stop you. I think that's not an issue here. That's not an issue what we have the authority to do. I don't think it's helping your case to argue about that. So just turn, turn your attention to what you think we should be doing. Well, what you should be doing is remanding this so that I can do discovery about their intentional interactions with the state of Illinois and their interactions with Zine when he bought the vehicle, both before, during and after he bought the vehicle. I want to talk to the salesperson. I want to talk to their corporate rep. I want their records. And I want to talk to how it came to be that he saw something on the internet that caused him to respond to them via email. I have a question before you're out of time. Perhaps we could just review your contacts for jurisdiction. You've got Zine lives in Illinois. Zine made phone calls and Zine saw things on the internet. What else do you have? Well, he emailed them from Illinois. He emailed them and said, I'm interested in this vehicle. And then they started calling him. Is that the vehicle he ultimately purchased? No, I mean, so I don't really even understand that. There's no case out there that says you have to purchase the exact same vehicle in order for jurisdiction to attach if it is. I mean, let's say they change the spark plug. All of a sudden, that's a get out of free jail card. He wanted a UTV. He got a UTV. And I haven't seen any case decided anywhere in the United States that is going to change that outcome. If he had gone there and instead of purchasing a UTV, he would purchase the rare Mona Lisa painting, maybe I get it. But that's not what happened in this case. He was looking for an utility vehicle and that's what he purchased. So I haven't seen any case law that's going to that closely distinguish between those situations. I haven't seen any case law anywhere in the nation that makes that kind of distinction. I mean, what he wanted was UTV and that's what he got. Hopefully you said that the parking case cited in your brief is the case that says web based activity invites jurisdiction. I don't see that case in your brief. Are you sure that's the name of the case? No, I can find it real quick though. Innovative garage door versus high ranking domains. Okay, and then it's also Zippo manufacturing versus Zippo.com, Incorporated. And those cases are, one's a second district case, one's a federal case. I mean, suffice to say there's been a lot of litigation on that. And again, you need to get into the nuts and bolts of how the website was put up and what kind of interactions are allowed and encouraged. I absolutely think that was fair game here based on what happened. Here's the thing, counsel, when a local manufacturer puts out, back in the day, puts out an ad in the newspaper and something on the local TV station, it's not reaching out to other states. But if you use the internet now to reach that same local market, the truth is it can go to a lot of places. That doesn't amount to purposely availing yourself of the jurisdiction of all of the various states that that ad reaches. Yeah, so here's what I'd say about that. The Zippo case in particular has set up a three-part criteria for that. And it's actually pretty complicated analysis about whether or not one extreme is exactly what you said. And I would agree that there is no jurisdiction under that. But there are other ways that the website can be set up that does allow for jurisdiction. And it's fact-based, which again gets back to what Judge Tobin in this case isn't justified. We need to find out whether or not there's jurisdiction by doing discovery. All right, counsel, time and rebuttal. Ms. Shelley. Good morning, Your Honors. May it please the court. My name is Stacey Shelley and I'm here representing Richmond Motorsports, Kentucky dealer of, among other things, utility terrain vehicles, which we refer to as UTVs. As I'm sure Your Honors can tell by reviewing the briefs, there was quite a complicated procedural history in this case. We litigated, felt like every issue multiple times over several years. I'm happy to answer any questions that you might have with respect to the jurisdiction of the appellate court to consider the trial court's various rulings. Any of the procedure, the appropriate standard of review, or the trial court's authority to control discovery under 201 on jurisdictional issues. But I think what is important, the most important to focus on is that the trial court's decision in granting the motion to dismiss the third amended complaint for lack of personal jurisdiction should be affirmed. Your Honor was asking about innovative garage door. We reviewed that decision, page 43 of our response brief and went through the reasons why it doesn't apply here. That case actually said that they weren't called on to consider whether the existence of a website alone provides a basis for Illinois to exercise jurisdiction. It's not the website alone, right? There's telephone communications as well. Right, and there's certainly cases, I know there's a case that, I think it might be McNeil v. Trambert, but don't quote me on that, that talks about, well, there was an entire deal negotiated, many, many phone calls, an entire deal negotiated. I think it was a North Carolina vehicle dealer, and they found in that case, because of the contacts, because of the length of the negotiations, they found that an exercise of personal jurisdiction was appropriate there. What is important and what counsel wants to talk about, well, he didn't get any discovery, I don't think that's accurate at all. If you look at 201L, there is no right under 201L to get discovery from the defendant. What 201L says is, while a motion filed under Section 2301 is pending, a party may obtain discovery only on the issue of the court's jurisdiction over the person of the defendant. Well, it doesn't say you don't get it from the defendant, which would certainly be the most reasonable subject of discovery. And the case law says, by engaging in that discovery, the defendant does not waive objections to personal jurisdiction. So I think the case law says it definitely can happen. I do not dispute that. My point is simply that it doesn't mandate it against the defendant. And what 2301 talks about, and I believe you're on a reference. I'm not letting that go.  The cases that say it's not waiving jurisdiction to participate in discovery are talking about the defendant, because that's the one who would otherwise waive jurisdiction. So the case law does anticipate that the defendant would be among those who could be the subject of discovery under 201L. I don't disagree with that. What my point is, is that on this case, Mr. Simpson, the plaintiff got discovery from Zeehan, and the other dictates of 201 still control as well, which is unnecessary duplicative discovery. 201C, which gives the court the right to enter any protective orders on needless litigation. And what we have here is under oath testimony that the plaintiff thought from, which I didn't know about until he filed it in this case, as the basis for a motion for sanctions against the co-defendant and use it as the basis for a motion for sanctions against the defendant. And that was the basis for his third amended complaint. And as your honors appropriately recognize, the plaintiff has the burden to prima facie demonstrate the existence of personal jurisdiction before the burden shifts to the defendant. And that our position was, and actually, frankly, Judge Birch agreed with it as well, but that's on the second amended complaint, which is not the subject of this appeal and which was mooted by the plaintiff's decision to file the third amended complaint. But that burden never shifts unless there's a fact to contest. We haven't contested the facts. For purposes of the motion to dismiss, we admit the existence of those facts. So the trial court had the plaintiff's pleading, which the plaintiff has an obligation to plead in good faith. I'm not suggesting he didn't, but he's the one who decides what facts goes into that complaint. His position is that facts that pertain to jurisdiction over a defendant are uniquely within the knowledge and control of the defendant. And so it's kind of a rigged game. It's a tilted playing field if you can't go to the source of the information to prove what you need to prove. Tell me why you think that's wrong. Well, I think it's wrong because I don't have the burden to disprove it. If he had pled it. We're talking about the burden to prove it. We're talking about getting to the facts so that he can prove it. He has the facts. He subpoenaed, before he brought us into this case, he issued a subpoena to Richmond Motorsports, which they complied with, which provided him with all of the purchase documents. He deposed Nathan Zahn for over 70 pages, asked him all the questions about the purchase of it. He went through that entire process, which clearly demonstrates that nothing to do with the UTV at issue actually happened in the state of Illinois. He didn't even, he had a conversation about something he did not purchase. I am not aware, for what it's worth, that UTVs are fungible. They have the numbers. You have to register them. It's like saying, I talked to you about buying a Cadillac, but I bought a BMW instead. But that's totally the same thing. You can't then sue Cadillac if there's a problem with the BMW. And you sue the guy who sold the car that wasn't the Cadillac? Well, that depends on the circumstances of the case, which the courts discuss. And, you know, this court recently, Your Honor, just wrote a decision in Wood v. Samsung that, you know, considered some of these issues, though in that case, you know, they actually pled the existence of personal jurisdiction. They then contested it. What the plaintiff is essentially asking us to asking to do here is to contest his own complaint. That's not appropriate. The 5th District, about a couple of- I think the issue is he wants to get to discovery, which really wouldn't be contesting the complaint. He wants to contest it in the way that he's saying we should have contested or would have contested the allegations in the complaint with an affidavit. I don't hear that. I hear him saying that he wants discovery to get to the facts on the issue that he has a burden of proving. That's not how the system is set up to work. It can be. It can be. It also- The court has authority under 201L. That's true, but the court also has great jurisdiction to determine what discovery is appropriate. Judge Tobin reviewed everything, decided he had the information he needed, and made a decision. I would also note that we argued that, in fact, counsel has plaintiff waived this issue by not filing a 191B affidavit. Well, there's nothing in the law that says you have to file a 191B affidavit to get discovery in a jurisdictional case. We can't look at one part of the rules and ignore the other part. 201L says there can be discovery on jurisdictional issues. Except 191B is directed at 2301 motions, 2301B motions specifically. If he had filed one, then we would be rightly talking about it. He didn't file one, and I don't think the inference from that is that, therefore, he's lost something. I respectfully disagree, but that's up to your honors to make a determination on that. One thing that the plaintiff has never identified, either in the trial court or in the appellate court, is how the discovery he wants to do, that he says he needs, would actually change the jurisdictional analysis in this case. I think it's incumbent on him to say, well, if this person testified to this, then that would change the decision here, and here's a case that says that. That has never happened. I have asked that question multiple times. I asked it during oral argument at the motion to dismiss. The trial court gave counsel the opportunity to answer that question, and he declined to do so. I raised it in my appellate brief. He's never said, if I get this discovery, if I can depose this person, if I can get an answer to this interrogatory, if I can get this document, this case says personal jurisdiction exists because. I mean, back in, I think, 1980, the worldwide Volkswagen case considered a similar issue, which is that the Supreme Court of the United States, and it remains good law today, said that a New York motor vehicle dealer could not be hailed into court in Oklahoma for an injury that occurred there. They allowed them to sue the manufacturer, which I think was Audi. They said the dealer couldn't be sued there. What we have here is, and to the extent the court thinks it's necessary to consider this, we actually don't even have a pending case in circuit court in Illinois right now. After this case, after my portion of the case went up on appeal, the plaintiff non-suited the remaining defendants at the end of May this year. What difference would that make? I mean, if we reversed, there would be a pending case against your client. What difference does that make? Because the basis for jurisdiction was Nathan Zan's residence in Boone County, Illinois. Richmond Motorsports is not a foreign corporation doing business in the state of Illinois. So the venue rules with respect to that a non-resident corporation that is registered to do business in Illinois can be sued in any county, that doesn't apply here. They're simply a non-resident. So there is no basis. And currently, right now, Boone County, Illinois has no interest. I don't know if you could hear us, Ms. Shelley, but you seem to have frozen up. Yeah. So. I think Mr. Simpson's frozen up too. No, I'm here. So normally what I believe the procedure is that the parties are escorted into a waiting room until we can resolve the issue. I am so sorry. My Internet went. I'm leaving angry voicemails for Comcast. I'm so sorry. It does happen. Not a problem. The clock has stopped. If you can recall where you were, you can continue your argument. I can recall where I was. Yes, thank you. What I was saying is that I reviewed a lot of cases, and I have not found any case where the sale for a vehicle was negotiated in another state, where delivery was paid for in another state, where delivery was taken in another state, and then an accident happened in a third state, not Illinois, where an Illinois court has said that is a basis to exercise personal jurisdiction over that foreign defendant. And the plaintiff hasn't pointed one out either. And I would submit to this court that the reason he hasn't been able to find any case law that supports his position is that because none exists, because it's not an appropriate exercise of long-arm jurisdiction. You know, what the cases talk about and what, you know, Your Honor recently reviewed in the Wood v. Samsung case is the three factors to really consider with respect to long-arm jurisdiction, purposeful availment, the relatedness, and the reasonableness. And when you get through the entire analysis and you get to the reasonableness part of it, they talk about due process. And they say even if the Illinois court have a have a good interest in considering this and reviewing this, that the get this right. That the due process may limit the power of Illinois courts to adjudicate a controversy, even if the defendant would suffer minimum or no inconvenience from being forced to litigate. And even if Illinois has a strong interest in applying its law to the controversy, I think I've just set forth the reason why Illinois currently has no interest in this controversy. But even putting that aside, if we're going to look at, you know, why long-arm jurisdiction exists, and that ultimately the ultimate analysis is due process and fairness. I think the question that I, you know, spent a fair amount of time arguing when we finally got to argue this motion in the trial court. And what I posed to this court is, is it fair to have Richmond Motorsports, a Kentucky corporation, that negotiated the sale of a vehicle and delivered it in the state of Kentucky for an accident that happened in the state of Wisconsin? Is it fair for them to be hailed into court in Illinois? I think I think you want to refine that question maybe and say, is it fair to find out if it's fair? Is it fair to do discovery on the nature of your client's contacts with Illinois before deciding if it's fair to call them into court here? So the plaintiff has discovery, Your Honor. He wants to pretend he doesn't. But he he has the he has all the purchase documentation. He has 70 plus pages of testimony from the person who bought the UTV that starts with, I did a Google search. He has telephone records, which whether or not they're competent evidence, they're probably before the court. They've certainly been considered, which actually demonstrate which he filed with the court and asked the trial court to consider, which show that the first phone call that occurred between Nathan Zeehan and a Kentucky phone number originated from Nathan Zeehan. He he talked through the whole process, he said, and then I went down there with two friends, decided I wasn't interested in the thing I talked to them about, found a brand new one, decided I want that. I bought it. They put it. They took it out of the crate and I left with it. So there's nothing with respect to the actual transaction that happened in the. In the state of Illinois and the we cited a case, I think it's the national gun case, but it talks about, you know, kind of the process. You know, where is the time? Where's the time start? This was not a situation where there's like an ongoing relationship. There was recently a case decided out of the first district that involved like the shipment of containers for pesticides from Iowa to Illinois. And the first district, it was an unpublished case, came out within the last couple of months, said there's enough because in that case, there's this 12 year history of sales and they shipped one hundred and fifty thousand barrels over that period of time. And they spent hundreds of thousands of dollars. And by the way, the sales. How did the plaintiff in that case learn that information? Well, the plaintiff in that case was the barrel manufacturer, so I think he probably knew it. So they were able to plead all of that, but he still knows how this transaction happened. Just because he doesn't like the answer doesn't mean he gets to conduct discovery. And I would posit to this court. So we didn't contest the allegations in the complaint. We said, yes, we agree. And frankly, as far as I know, that's exactly what happened for whatever that's worth. We agree. We don't think those allegations demonstrate the existence of jurisdiction. You know, trial court, what do you think? They agreed with us or the trial court agreed with us. So. But let's say we had filed an affidavit in response, but that affidavit mirrored Nathan Zeehan's testimony. You don't get to depose somebody who files an affidavit just to see if you think that you can shake them off their game and see if you can get them to change their story. This is a 301 motion. This doesn't really get to the merits of liability. This is for determining for the purposes of jurisdiction. Does this court have jurisdiction to hear the rest of the case? And the trial court has discretion under 201 to say, yes, I've got enough to make that decision. That's what the trial court said here based on subpoenaed records from Richmond, the in-depth testimony of Nathan Zeehan and Nathan Zeehan's telephone records, which the plaintiff subpoenaed. The trial court has the discretion to make that decision. They did that and the plaintiff hasn't demonstrated the existence of any legal authority on a similar fact pattern where. Either where the appellate court were an appellate court anywhere said, no, we disagree. You have to go back and do more discovery. Do you agree that Judge Tubman had the discretion to have allowed this discovery? So I can tell you that we would have taken the position. And in fact, we did take the position that. If there's nothing, if we're not content, there are contested issues of facts, if we agree, you know, we did. Asked to be held in contempt on that issue and took it up that completely the landscape of the chain of the case changed significantly after that happened. And Attorney Simpson filed the motion attaching Nathan Zeehan's deposition testimony. We elected to withdraw, seek voluntary dismissal of our appeal. And we asked Judge Tubman to reconsider that decision on the basis of, you know, what was what was to us newly discovered evidence. But that's not before the court right now. Thank you court for your time today. We respectfully ask that you affirm the trial court's dismissal of Richmond from the suit. Thank you. Thank you, counsel. Mr. Simpson, you have a bottle. Just a few quick points. So, 1 of the things I completely disagree with is because we took because we were present for zines deposition that therefore we were limited to whatever he had to say. Basically, what they're saying is you don't get to discover whether or not our client disagrees with zine and has different information than he did. And I just think that's completely unfair when really, at the end of the day, the question is, is whether or not Richmond Motorsports purposely directed their activities at the form state. And the only way to get to that is discovery that is exclusively held by Richmond Motorsports. Counsel is your argument that there is general jurisdiction over Richmond or specific jurisdiction. Yeah, related to this transaction. Well, so here that's good question. I would say that we've argued both. I would say that the United States Supreme Court decisions, as I've interpreted them have sort of eliminated general jurisdiction, but because we haven't had any discovery, we still could potentially have arguments along those lines. It seems like the where the Supreme Court's going is to go with specific jurisdiction. But again, I don't know the answer to that. I mean, all I'm saying is, is that we can't have our hands tied behind our back and not get discovery and then say, well, you didn't prove anything because you didn't get discovery on things you have a right to know. And you just simply had no way to get to. One of the things that they said is, is if they had submitted an affidavit, we wouldn't be able to depose the affiant. And I can't imagine what would be less fair than that. I mean, so we're going to do a trial and the witness is going to testify and you don't get to cross examine the witness. Is that what we really got to on this? Yeah, I don't think that's an issue here. I don't know if you want to spend your time on that. Yeah. And then finally, I'll just say this too. You know, she's sort of and Judge Tobin sort of suggested nefarious things about us deposing Zine. He was deposed in the coverage case. There were two coverage cases, both of which we lost, one of which we appealed to this court. And then Judge Tobin got affirmed. But the notice for Zine's death in the progressive case was not sent by me. OK, it was sent by progressive. I just attended. And the other thing was, is I did ask some questions about Richmond Motorsports, but that wasn't the focus of that death. That was just tangential to some other issues that we were discussing in the coverage case. So, I mean, theoretically, you know, we could depose Zine as part of this jurisdiction thing. I wasn't requesting that, but, you know, he was never deposed in a form just on this jurisdiction issue. And I'd be happy to take his step again and have Miss Shelley there and she can ask him whatever she wants. But I think on these facts, we should be allowed to find out what Richmond knows about its own choices regarding directing purposefully and directing activities to Illinois. OK, thank you, counsel. Court will stand in recess, take this matter under advisement.